WILLIAM EUGENE LEWIS, Appellant,

*v.*

M. C. BOWERS et al., Appellees.

392 S.W.2d 819.

(*Knoxville,* September Term, 1964.)

Opinion filed July 12, 1965.

HAMPTON & HAMPTON, Elizabethton, for William Eugene Lewis.

Dugger, Dugger & Cole, Street, Banks, Merryman & Musick, Allen, Nelson & Bowers, Hallie K. Riner, Charles Crockett, David F. Tucker, Jr., Elizabethton, Green & Green, Johnson City, for M. C. Bowers and others.

Mr. Justice Dyer delivered the opinion of the Court.

Appellant, William Euguene Lewis (hereinafter referred to as complainant), brought suit against the Appellees, M. C. Bowers, et als (hereinafter referred to as defendants), alleging ownership as a tenant in common of a one-half (½) undivided interest in certain real property conveyed to defendants by complainant's grandmother Addie Thomas Lewis, and others. To the bill, defendants filed demurrers which the Chancellor sustained, treating them as one demurrer representing all the numerous defendants. Complainant seasonably perfected his appeal, and the case is here now on demurrer.

The ultimate issue for determination is, what interest, if any, complainant has in the realty. For reasons discussed infra, we hold that he possesses no interest whatever therein.

At this point, the rather complicated and involved factual and historical background of this controversy

should be set out. To facilitate this endeavor, we are attaching as an appendix to this opinion a chart of the family tree of W. S. Thomas, the testator, under whose will the land in controversy passed.

Less than ten days before his death on April 12, 1885, W. S. Thomas, hereinafter referred to as the testator, executed his last will and testament. The relevant portions thereof to this lawsuit are the fifth clause and the codicil, which read as follows:

5th. I will, give, devise & bequeath my home farm at the termination of the estate for life or widow hood hereinbefore to my wife to my three children, Andrew Thomas, Henderson F. Thomas and Ada Thomas equally share and share alike.

Codicil No. 1. After more nature (*sic*) consideration, I desire to make this codicil to my Last Will and Testament above written and desire that the same be made apart thereof; that is to say instead of the absolute devise of my home farm to my three children Andrew, Henderson F. and Ada, as provided by the 5th clause of my said Will, it is my will and desire and, I do hereby give & devise my said home farm at the expiration of the estate therein devised to my wife Jane Thomas, as provided by the third clause to my Executor Dr. E. E. Hunter in trust for my said three children Andrew, Henderson F. and Ada for life, equally, share and share alike, to be freely used & enjoyed by them and at their death to go to their heirs at law in fee, *and this I do as a protection to my said children two of them being of tender years,* the balance of my said Will I do in all things hereby affirm. (Emphasis supplied.)

Subsequent to the testator's death, E. E. Hunter (ap-

pointed executor and trustee under the will) entered into the performance of his duties. With the court's approval, several acres of the realty were sold, the proceeds therefrom being used to pay the indebtedness of the estate.

Jane Thomas, the testator's widow, dissented from the will. John D. Thomas, one of the testator's three sons, was in effect disinherited under the will and accordingly took no interest in the land here in controversy. Shortly after the testator's death, his son Andrew died intestate, leaving his widow Amanda and one son W. H. Thomas. Complainant's father, W. Fred Lewis, died in 1942, and complainant's grandmother Addie (the testator's only daughter) died on January 18, 1963.

In 1891 E. E. Hunter filed suit against Jane Thomas and other interested parties under the will to: (a) obtain the court's approval to sell the realty devised under the testator's will to the Co-operative Town Company (hereafter referred to as Co-op), and (b) obtain an adjudication of what interest the various parties possessed in the land. A decree was rendered on November 18, 1891 which, *inter alia,* confirmed the proposed sale.

Then in 1892 complainant's grandfather (Steven Lewis) and E. E. Hunter filed an original bill in the nature of a bill of review making defendants thereto: Co-op, Jane Thomas, Amanda Thomas, W. H. Thomas, Henderson F. Thomas and Addie Thomas Lewis, all of whom had been parties to the original suit. Also made a party-defendant to the 1892 suit was W. Fred Lewis (complainant's father), who had not been a party to the initial suit. The court held that the 1892 bill could be maintained as a bill of review against all the named defendants save W. Fred Lewis and as an original bill as to him.

The Chancery Court in 1892 reversed the 1891 decree in two particulars not germane here. The second decree was in all things affirmed by this Court, and thus it merits scrutiny here. The following excerpt is particularly relevant:

And the Special Chancellor being of the opinion further that this is a proper case for the construction of the last will and Testament of W. S. Thomas Decd. and that it requires Judicial construction in order that the rights of the parties may be clearly defined. It is accordingly adjudged and decreed that under the 5th clause and the codicil of the Will the Testators three children Andrew, Henderson and Ada *took the entire beneficial interest* in the land subject alone to the life estate of Jane Thomas widow of Testator or the estate during her widowhood. And the trust in favor of E. E. Hunter in whom the legal title was vested to continue only during their natural lives without any interest in or benefit to be derived from the property. And he holds that it was not the intention of the Testator to limit the estate in the hands of his three children for life, but that he intended to create a Trust estate for them which should cease on their death and on the happening of such event the trust would cease and the legal title or fee would vest in the legal heirs of such devisees *by descent and not by purchase* under said will; and it is accordingly so adjudged and decreed. Wherefore the Court is pleased to order ajudge and decree that *the minor Defts. W. F. Lewis & W. H. Thomas take and have no interest under said will and codicil in the lands devised by said will and codicil.* And it appearing that Andrew Thomas has died intestate and leaving as his sole heir a son W. H. Thomas and the widow Amanda.

It is adjudged and decreed that *as to the interest of said Andrew the trust ceased at the date of his death and the same vested in the same W. H. Thomas subject to the dower interest of his mother* & claim of Jane Thomas to dower and homestead in the whole of the land she having dissented from the said will and taken homestead and dower instead of the life estate in the whole of the tract.

And the Court being of opinion further that *the widow of Andrew J. Thomas Decd. is entitled to dower in the third of the land which her son the said W. H. Thomas takes by inheritance from his said Father.* * * * It is further adjudged and decreed that as to the two remaining interest the trust created by the codicil continues during the life of the said Henderson and Addie and the corpus of their respective estates will be preserved and they will be entitled to receive and enjoy the increase and profits from the same.

* * * (I)t is further adjudged and decreed that the funds derived and to be derived from the sales to the Cooperative Town Co. belonging to the said Henderson and Ada be paid over to E. E. Hunter Trustee. * * * This fund will be invested in a Judicious manner so that the greatest possible income may be derived from it, and to have the same safe and secure. (Emphasis supplied.)

Some two months after the rendition of the 1892 decree, an indenture was entered into between the Clerk and Master of the Chancery Court (to whom the title had been delivered in escrow) and Co-op whereby the title passed to the latter subject to a lien for the unpaid purchase money. At this point of time, Henderson and Addie were still apparently in their minority. Thus, their

shares of the funds were to be "invested in a Judicious manner", as prescribed by the 1892 decree.

Subsequently Co-op became insolvent and Watauga Land Company succeeded to its interest. Since Henderson and Addie at this point had not yet received their share of the proceeds of the sale to Co-op, they petitioned the court for permission to "buy in" for the amount due them under their liens. The court acted favorably upon this petition, and in June, 1897 the land was conveyed by Watauga to E. E. Hunter "to be held by him in trust for said Henderson F. Thomas and Ada Lewis *under same terms and conditions as provided by said last will and testament of said W. S. Thomas.*" (Per the deed—emphasis supplied.)

Thus, although a break in the chain of title apparently occurred, the 1892 decree, which construed the testator's last will and testament, is nonetheless controlling here. This because the conveyance from Watauga to E. E. Hunter was made in trust for Henderson F. Thomas and Addie Thomas Lewis "under same terms and conditions as provided by * * * will * * * of * * * W. S. Thomas."

The emphasized portions of the 1892 decree above-quoted find particular relevance here. That decree, *inter alia*, held that: (1) the minors W. H. Thomas and W. Fred Lewis took and had no interest *under the will* in the property devised thereunder; (2) the widow of Andrew (Amanda) was entitled to dower; and (3) Andrew's son (W. H. Thomas) succeeded to his father's interest (subject to Amanda's dower rights) by inheritance, and not by purchase.

In the fifth clause to his will, the testator made an absolute devise of the realty to his three children after the

estate for widow hood to Jane Thomas terminated. In his codicil however, this devise was modified, giving his three children trust estates, the legal title going to his executor E. E. Hunter. What was the testator's purpose in creating the trust? In his own words, it was as follows: ("A)nd this I do as a protection to my said children two of them being of tender years."

It has long been the rule in this jurisdiction that a trustee takes only such quantity of interest as the purpose of the trust requires. *Smith v. Metcalf,* 38 Tenn. (1 Head) 64 (1858); *Williamson v. Wickersham,* 43 Tenn. (3 Cold.) 52 (1866); *Park v. Cheek,* 44 Tenn. (4 Cold.) 20 (1867) and *First American National Bank v. Cole,* 211 Tenn. 213, 364 S.W.2d 875 (1963).

Particularly persuasive here is the Cole decision, supra, involving a trust set up by the testatrix for her two daughters. The trust instrument provided that the trustee should pay over one-half of each daughter's share on the date of such daughter's twenty-fifth birthday, with the remainder being payable upon her thirtieth birthday. The testatrix's death came some twenty years subsequent to the execution of the trust instrument, by which time both daughters has attained age thirty. Under these facts, this Court held that the trust had ceased, saying:

> It is true that this trust was not a dry, but an active, trust—one imposing an active duty upon the trustee. *Jourolmon v. Massengill,* 86 Tenn. 81, 5 S.W. 719. But the trustee took only such quantity of interest as the purposes of the trust required; and where the period of the trust has elapsed, *and its purposes have been accomplished, the trust ceases, and the legal title vests in the beneficiary. Ellis v. Fisher,* 35 Tenn. 231; *Win-*

*ters v. March,* 139 Tenn. 496, 501, 202 S.W. 73; *Tramell v. Tramell,* 162 Tenn. 1, 34, 32 S.W.2d 1025, 35 S.W.2d 574. (Emphasis supplied.)

Just as the purpose of the Cole trust was to protect the two daughters of the testatrix during their years of inexperience and immaturity, so too did the trust here have a like purpose. Indeed, such purpose was expressly declared in the codicil where, after revoking the absolute device, the testator said: "(A)nd this I do as a protection to my said children two of them being of tender years. * * * ''

█ Equally relevant here is the Cheek decision, supra, which held that a trustee in whom a legal title is vested takes such an interest therein as the purposes of the trust require, and that as soon as the trust is satisfied the legal estate will vest in the person entitled thereto. In the case at bar, the record is silent on the existence of any duty placed upon the trustee Hunter during this century. Nor does it appear that subsequent to his death, another trustee was appointed. Under these facts, since Addie Thomas Lewis had long since reached her majority, we must assume that the purpose of the trust, i. e., the protection of the minor children, had been satisfied. Thus the legal title vested in Addie upon satisfaction of the trust and accordingly she in fact possessed the power to convey the fee simple to defendants and their predecessors in title.

Such a result is in keeping with the 1892 Chancery Court decree (affirmed by this Court) which held as aforesaid that complainant's father, W. Fred Lewis, took and had no interest under the will in the lands devised thereby.

Numerous other grounds were alleged in the demurrer below, but due to the disposition of the above issue we find it unnecessary to consider same.

██ Concerning costs, we have previously held that since the taxation thereof is discretionary with the lower courts, we are unable to review their action except under very extraordinary circumstances. *State ex rel. Wilson v. Bush,* 141 Tenn. 229, 235, 208 S.W. 607 (1918). Thus, since costs of court are a discretionary matter for the court that tries the case to determine and reviewable here only for manifest abuse, it follows that we are not in a position in this case to consider the matter, there being no manifest abuse of discretion below. See T.C.A. 20-1621. Merely because this cause was brought under the pauper's oath does not render this an extraordinary matter.

Accordingly we affirm the action of the Chancellor in all respects and assess appellant costs as below assessed.

# APPENDIX

W. S. Thomas and wife, Jane Thomas

John D. Thomas

Andrew Thomas et ux
Amanda Thomas

W. H. Thomas

Henderson F. Thomas
et ux Minnie Thomas

Carrie Thomas
Bowers

Wm. E. Thomas

Ethel Thomas
Hardin

Addie Thomas Lewis
et vir Steven Lewis

Wm. Fred Lewis
et ux Blannie Lewis

William E. Lewis