# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 13, 2005 Session

## CAROL BRACKEN ORTEN v. THADDEUS CHARLES ORTEN

**Appeal from the Fourth Circuit Court for Knox County**
**No. 95527    Bill Swann, Judge**

_____ **Filed August 26, 2005** _____

**No. E2004-02987-COA-R3-CV**

_____

Carol Bracken Orten ("Wife") sued Thaddeus Charles Orten ("Husband") for a divorce. During the course of discovery, Husband refused to provide certain financial information as he felt the information to be irrelevant. After Husband failed to appear without explanation at the second Trial Management Conference, the Trial Court entered a default judgment against Husband as a sanction for his actions. Husband's attorney immediately withdrew from the case and the Trial Court then proceeded to distribute the marital property and award Wife alimony and child support based solely on Wife's uncontested testimony. Husband secured new counsel and filed a motion to alter or amend the judgment, or for a new trial. The Trial Court denied Husband's motion and this appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. SHARON G. LEE, J., filed a dissenting opinion.

Joe R. Judkins, Wartburg, Tennessee, for the Appellant Thaddeus Charles Orten.

Virginia A. Schwamm and Donna H. Smith, Knoxville, Tennessee, for the Appellee Carol Bracken Orten.

# OPINION

## Background

On October 30, 2003, Wife filed a complaint for divorce seeking dissolution of her twenty-three year marriage to Husband. As grounds for divorce, Wife alleged Husband was guilty of inappropriate marital conduct and/or cruel and inhuman treatment. In the alternative, Wife claimed that irreconcilable differences had arisen between the parties. The parties have four children, two of whom are minors.

Husband's attorney, Robert Wilkinson ("Wilkinson") entered an appearance on December 31, 2003, and Husband formally answered the complaint on March 18, 2004. In Husband's answer, he denied engaging in inappropriate marital conduct or that grounds for divorce otherwise existed.

In April of 2004, Wife filed a motion to compel claiming Husband's responses to Interrogatories and Requests for Production of Documents were past due as they were two days late. A couple of weeks after the motion to compel was filed, the Trial Court entered a Trial Management Order. As pertinent to this appeal, the Trial Management Order provided as follows, with all emphasis being in the original:

> This is set for contested trial **July 21, 2004.** A trial management/settlement conference will be held on **April 19, 2004**, at 9:00 a.m. ***Both counsel and both parties must be present in open court for the trial management/settlement conference. There is no exception to this mandatory appearance by all four persons, other than full resolution of all issues, already reduced to a final order taxing costs, approved by all counsel, and presented by one attorney with his/her client on or before the day and time scheduled for the trial management.***
>
> \* \* \* \*
>
> **Pursuant to Rule 55 TRCP, notice is herewith given that a <u>default judgment may be pronounced against a party failing to comply with a trial management order.</u> See TRCP Rules 16.06 and 37.02 for other consequences.**

The Trial Management Order then detailed the matters that would be addressed at the management/settlement conference and what the parties and their attorneys were expected to accomplish before the conference.

On April 16, 2004, the Trial Court entered an Interim Order agreed to by the parties. The Interim Order required Husband to vacate the marital residence within thirty days. This order also set forth which of the marital bills each party would be responsible for paying until the trial took place. Husband's child support payment were set at $813 per month and his co-parenting time with the children also was established.

The first Trial Management Conference took place as scheduled on April 19, 2004, with both parties and their attorneys in attendance. Following the Trial Management Conference, the Trial Court entered an order requiring Husband to respond to Wife's discovery requests by April 30, 2004. Any further discovery requests had to be submitted no later than May 15, 2004, and discovery depositions had to be completed by June 30, 2004. The Trial Court previously had entered an order requiring the parties to submit their dispute to mediation, and the order entered following the Trial Management Conference stated that the parties had selected a mediator. Finally, a second Trial Management Conference was scheduled for June 28, 2004. The July 21, 2004 trial date remained unchanged.

Husband failed to appear at the second Trial Management Conference on June 28. Wilkinson was present but was unable to offer the Trial Court any explanation for his client's unexplained absence. The Trial Court noted that pursuant to Tenn. R. Civ. P. 16.06, if a party fails to obey a scheduling or pre-trial order, then the Trial Court, upon motion or the Trial Court's own initiative, can make such orders as provided for in Tenn. R. Civ. P. 37.02. Wife's attorney made such a motion, which the Trial Court granted by entering a default judgment against Husband. After granting the default against Husband, the Trial Court stated that Wife would be allowed to testify regarding distribution of the marital property and her request for alimony, etc., and Husband would be allowed only to cross-examine Wife and could not put on any direct proof on these issues. After the Trial Court explained how the case would proceed, Wilkinson orally moved to withdraw from representing Husband. The Trial Court granted the motion stating:

> Mr. Wilkinson prays for withdrawal and the same is allowed. That would then mean, Mr. Wilkinson, from this point forward there will be no cross-examination and [Wife's attorney] will prepare the decree.… There being no cross-examination, then, we can take the wife's proof ….

Husband's attorney presumably left the courtroom and then Wife was called to testify. Following the hearing, the Trial Court entered a Final Judgment of Divorce. In summary, the Final Judgment stated that Husband had sufficient notice of the second Trial Management Conference and was not present, that Husband had stated he would not comply with written discovery requests seeking documentation of financial accounts, including credit card accounts, and that a judgment by

-3-

default was being entered against Husband.[1]  Accordingly, the Trial Court granted Wife a divorce based on her unrefuted testimony as to her grounds for divorce.  The Trial Court found Wife could not be rehabilitated and established Husband's alimony payment at $25 per month while he was paying child support for both minor children, $325 per month when the next oldest minor child became emancipated, and $1,000 per month when Husband's child support obligation ceased altogether.  The Trial Court awarded Wife 60% of the equity in the marital residence, which equaled $30,000.  Husband was awarded the remaining 40%.  The Trial Court equally divided Husband's retirement account.  Wife was awarded a 2000 GMC Safari Van and Husband was awarded a 2004 Volkswagen.  Each party was awarded the personal property in their possession.

With regard to the marital debts, Husband was required to pay all of the following: (1) $1,700 on the Bank of America Visa, (2) $5,000 on the Chase Visa, (3) $6,000 on the Discover Card; and (4) the $6,000 in remaining debt on a piano purchased by the parties.  The Trial Court ordered Husband to pay approximately $10,000 of Wife's credit card debt as attorney fees awarded to Wife.  Wife was ordered to pay a total of $1,106.64 in credit card debt.

Husband immediately obtained new counsel and filed a motion to alter or amend or, in the alternative, motion for new trial.  In this motion, Husband claimed he simply forgot about the Trial Management Conference scheduled on June 28, 2004, although he admitted receiving the order setting the second conference for that date.  Husband claimed that had his attorney, Wilkinson, simply reminded him of the conference or called him that morning, he would have been present.  A hearing was held on Husband's motion and Husband testified at the hearing.  In summary, Husband testified consistent with the points raised in the motion for new trial and further pointed out that he was present for all other necessary events during the course of the proceedings.  Since Husband tried to cast partial blame on Wilkinson for his alleged failure to keep Husband properly apprised, the Trial Court reserved ruling on Husband's motion until Wilkinson's testimony could be obtained.  Wilkinson's deposition was taken and he testified, among other things, that he discussed the scheduled second Trial Management Conference with opposing counsel at Husband's deposition just three days before the second conference on June 28, 2004.  This conversation took place while Husband was in the "same room."  Again, we note there is no question that Husband received a copy of the order scheduling the second Trial Management Conference.

After considering Husband's and Wilkinson's testimony, the Trial Court denied Husband's motion to alter or amend or for a new trial.  The Trial Court acknowledged that default judgments are not favored under the law.  However, the Trial Court also stated that notice to Husband of the second Trial Management Conference was "absolutely clear."  According to the Trial Court:

> [Husband's] nonappearance for Trial Management is very much of a
> piece with his earlier behavior in the case: obstructive; in some cases,

---

[1] In Husband's deposition, he boldly refused to provide certain financial information claiming, in his opinion, that the requested information was not relevant.

-4-

defiant; delaying; not complying with discovery. And this nonappearance on Trial Management day, 6/28/04, would constitute a further act, if you will, of passive aggression. I'm just not going to be a part of it. I oppose it.

[Husband stated he] simply forgot, but Page 25 of Mr. Wilkinson's deposition shows the unlikelihood that … [Husband's] account or suggestion is credible.

Husband appeals raising only two issues. First, Husband claims the Trial Court erred when it entered a default judgment against him based on his failure to appear at the Trial Management Conference. In the alternative, Husband argues the Trial Court erred when it failed to grant his motion to alter or amend or for a new trial.[2]

## **Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Tenn. R. Civ. P. 16.06 provides as follows:

**16.06. Sanctions. –** If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37.02. In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

---

[2] Husband does not raise in his brief any issues regarding the propriety of the marital property distribution or award of alimony.

-5-

Tenn. R. Civ. P. 37.02 sets forth various types of orders that can be entered by a trial court in response to a party's failure to comply with certain orders. These include:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party*;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

\* \* \* \*

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. (emphasis added)[3]

The issue of whether the entry of a default judgment against Husband was too severe necessarily requires us to examine why the Trial Court believed such a sanction was justified. In short, the Trial Court did not believe Husband's account that he inadvertently forgot about the scheduled Trial Management Conference. Instead, the Trial Court concluded Husband's nonappearance was part of his "obstructive" and "defiant" behavior which had been exhibited throughout the course of the proceedings. Whether Husband's nonappearance was due to his being

---

[3] Tenn. R. Civ. P. 37.02(C) specifically permits entry of a default judgment under specified circumstances. Contrary to Husband's argument on appeal, the present case in no way involves the entry of default judgment pursuant Tenn. R. Civ. P. 55, which authorizes the entry of a default judgment when a party fails to plead or otherwise defend an action as set forth in the applicable rules.

obstructive and defiant, or whether it was due to inadvertent oversight as Husband claims, was a question of fact to be determined by the Trial Court after considering all relevant proof. In *Wells v. Tennessee Bd. of Regents*, our Supreme Court observed:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

After reviewing the proof, we are unable to conclude the evidence preponderates against the Trial Court's factual conclusion regarding the underlying reason Husband failed to appear at the Trial Management Conference. The issue then becomes whether a default judgment can be an appropriate sanction when a party intentionally fails to appear at a trial management conference because they are being obstructive and defiant.

*March v. Levine*, 115 S.W.3d 892 (Tenn. Ct. App. 2003), involved a wrongful death action where the trial court entered a default judgment against Perry March ("March") after he refused to return to Nashville for a deposition after being ordered by the court to do so. March did offer to give a telephonic deposition or to submit to a deposition in Mexico. The Trial Court entered the default judgment against March as a sanction pursuant to Tenn. R. Civ. P. 37.02(C). After the default judgment was entered, a jury assessed $113,500,000 in damages against March. In reversing the entry of the default judgment, we stated:

> Default judgments in general should be set aside if reasonable doubt exists as to the conduct of the defaulting party. *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn. Ct. App. 1980); *Nelson v. Simpson*, 826 S.W.2d 483 (Tenn. Ct. App. 1991). This rule must be balanced against the rule that the trial judge may be reversed on the imposition of sanctions only by an affirmative showing of an abuse of discretion. *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984).… Considering the conduct of Mr. March subsequent to the filing of the

wrongful death action, the imposition of a default judgment is simply too drastic a sanction for his behavior. Throughout this entire proceeding, Perry March has not been the only transgressor. The Levines, in their zeal to sustain their position and to punish Perry March for what they sincerely believe to be the murder of their daughter, have contributed greatly to the problems in this case. This Court recognizes the patience and fortitude of the learned trial judge in trying his best to control this litigation, preserve the absentee estate, and maintain the integrity of his court in the face of nearly insurmountable challenges.

*Id.* at 913.

In *Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Development Venture*, 828 S.W.2d 412 (Tenn. Ct. App. 1991), we upheld a trial court's entry of a default judgment against the defendant pursuant to Rule 37.02. We stated:

The propriety of the judge's action depends, in part, on whether he was correct in granting the default in the first place. We think he was – on two separate grounds. First, Rule 37.02(C), Tenn. R. Civ. P., authorizes a trial judge to enter a default judgment for the defendant's failure to comply with discovery orders. Second, the defendants did not get new counsel within the time allowed and did not answer the plaintiff's amended complaint.

*Id.* at 413-14. *See also Hodges v. Att'y General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)("Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court.").

The foregoing makes clear that the Trial Court had discretion regarding if and how to sanction Husband for his improper conduct. We likewise review the Trial Court's denial of Husband's motion to alter or amend or for a new trial pursuant to an abuse of discretion standard.[4] *See Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004) ("We review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion.")(quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003). After reviewing the entire record and giving credence to the Trial Court's factual findings, we are unable to conclude that the Trial

---

[4] As an alternative argument on appeal, Husband argues that he is entitled to relief from the judgment pursuant to Tenn. R. Civ. P. 60.02. Husband's motion to alter or amend or for a new trial was filed before the Trial Court's judgment became final. Therefore, it is a motion which was timely filed pursuant to Tenn. R. Civ. P. 59.02 and/or 59.04. Because the judgment had not become final, the provisions of Tenn. R. Civ. P. 60.02 are not implicated because that Rule governs how a party can obtain relief from a final judgment.

Court abused its discretion when it entered a default judgment against Husband, or that it abused its discretion when it denied Husband's Rule 59 motion to alter or amend or for a new trial.

### **Conclusion**

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed against the Appellant, Thaddeus Charles Orten, and his surety.

_____

D. MICHAEL SWINEY, JUDGE